LTG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA | **TO BE FILED UNDER SEAL** |
| - against - | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT |
| STEVEN PARRY, | |
| DEFENDANT. | (21 U.S.C. § 841(a)(1)) |

- - - - - - - - - - - - - - - - - -X

16-0150M

EASTERN DISTRICT OF NEW YORK, SS:

      MICHELLE L. O'TOOLE, being duly sworn, deposes and says that she is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed and acting as such.

      On or about and between August 28, 2013 and February 21, 2014, both dates being approximate and inclusive, within the Eastern District of New York, the defendant STEVEN PARRY, did knowingly and intentionally distribute a controlled substance, which offense involved substances containing (1) oxycodone and methadone, Schedule II controlled substances; and (2) hydrocodone, a Schedule III controlled substances, without a legitimate medical purpose.

      (Title 21, United States Code, Section 841(a)(1))

      The source of my information and the grounds for my belief

are as follows:[1]

       1.    I have been a Special Agent with the DEA approximately 10 years and am currently assigned to the Tactical Diversion Squad ("TDS") of the DEA's Long Island District Office ("LIDO"). The TDS investigates the illegal diversion and distribution of prescription medications of all DEA registrants, often by medical practitioners. During my tenure with the TDS, I have participated in numerous narcotics investigations in which prescriptions for Schedule II controlled substances have been issued by medical doctors to patients outside the usual course of professional practice and not for a legitimate medical purpose.

       2.    I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents, my training and experience, and discussions I have had with other law enforcement personnel concerning the investigation described herein. I have also conferred with a medical doctor who is a pain management specialist about this investigation.

---

[1] Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not set forth all of the facts and circumstances of which I am aware.

**INTRODUCTION**

3. Among other duties, I am participating in an investigation of the defendant STEVEN PARRY, a doctor of Osteopathic medicine ("DO"), with a self-described specialty in family medicine, for the illegal issuance of at least nineteen prescriptions for oxycodone, methadone and hydrocodone, outside the usual course of professional practice and not for a legitimate medical purpose.

**THE DISTRIBUTION OF CONTROLLED SUBSTANCES GENERALLY**

4. The Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and regulations promulgated thereunder, classify controlled substances in five schedules. Schedule I drugs, including, for example, heroin and LSD, do not have an acceptable medical use in the United States. Schedule II through Schedule V drugs have acceptable medical uses. The medical use of substances in Schedule II, including, for example, oxycodone and methadone, are severely restricted because such drugs have a high abuse potential. Substances in Schedule III, including, for example, hydrocodone (Vicodin), have an abuse potential less than those in Schedule II, but more than Schedule IV controlled substances, and so forth. Schedule V drugs consist primarily of preparations containing limited quantities of certain narcotics and stimulant drugs.

5. Pursuant to 21 C.F.R. §§ 1306.11(a) and 1306.21(a), a controlled substance listed in Schedules II, III, IV or V, that is a prescription drug, as determined under the Food, Drug & Cosmetics Act, 21 U.S.C. §§ 301, et seq., may be dispensed only if prescribed by an authorized practitioner.

6. 21 C.F.R. § 1306.04 sets forth the purpose of the issuance of a prescription. It says, in pertinent part, in order for "[a] prescription for a controlled substance to be effective, [it] must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner...[a]n order purporting to be a prescription issued not in the usual course of professional treatment...is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

7. Oxycodone hydrochloride (oxycodone), is a semi-synthetic opioid analgesic medication, and Schedule II controlled substance generally prescribed for the relief of moderate to severe pain.

8. Methadone is an opioid analgesic medication and Schedule II controlled substance generally prescribed to treat pain or to help with detoxification and maintenance for people with opioid dependence.

9. Hydrocodone is a semi-synthetic opioid analgesic medication and Schedule II controlled substance for the relief of moderate to severe pain.[2]

**BACKGROUND OF THE INVESTIGATION**

10. In June 2012, the DEA interviewed an individual addicted to oxycodone, hereinafter referred to as a confidential source (CS) who identified the defendant STEVEN PARRY as a medical doctor to whom the CS was sending acquaintances for the purpose of obtaining additional oxycodone to feed the CS's habit. The CS advised that defendant PARRY was known "on the street" as an "easy write" or a doctor from whom one could obtain a prescription without showing any legitimate medical necessity.

11. Thereafter, a pharmacist working on Long Island contacted the DEA and reported that multiple drug-seeking individuals were coming to the pharmacy with controlled substance

---

[2] Prior to October 6, 2014, hydrocodone was classified by the DEA as a Schedule III controlled substance; however, it was reclassified as a Schedule II controlled substance as of that date. During all times relevant to this matter, hydrocodone was a Schedule III controlled substance.

prescriptions issued by defendant PARRY.

12. Based upon this information, DEA investigators requested and obtained records from the Bureau of Narcotics Enforcement detailing the defendant PARRY'S controlled substance writing history. The records revealed that defendant PARRY was issuing prescriptions for large quantities of narcotics to relatively young patients, some of whom lived quite far from defendant PARRY'S office. Of further concern was the fact that multiple prescriptions were written to more than one individual residing in the same household.

13. Then, in December 2012, DEA Diversion Investigators met with the defendant PARRY concerning his suspicious prescription writing activities. During the meeting, defendant PARRY acknowledged that he should be "weaning" many of his patients off the high doses of narcotics he was prescribing and assured the investigators that he would more closely monitor his prescription writing activities going forward.

**JANE DOE**

14. Jane Doe was a patient of defendant PARRY's from 2010 until her death in 2014. A review of defendant PARRY's medical file concerning Jane Doe, obtained via Grand Jury subpoena, reveals that defendant PARRY treated Jane Doe for various ailments and that

defendant PARRY issued Jane Doe hundreds of controlled substance prescriptions during that time period.

15. Jane Doe's medical file, maintained by defendant PARRY, contained the following relevant information:

    a. A letter dated November 11, 2010 from Medicaid, addressed to the defendant PARRY, advising defendant PARRY that Jane Doe had a history of drug abuse and rehabilitation treatment, and that she had been prescribed Suboxone to treat opioid addiction;

    b. The results from seven drug tests administered to Jane Doe between September 2010 and January 2014, noting the absence of the prescribed narcotics in Jane Doe's system.[3]

    c. Five separate entries between March 2012 and December 2012 detailing defendant PARRY'S conversations with Jane Doe during which the use of Suboxone, a treatment for opioid dependency, was discussed.[4]

    d. An entry dated January 28, 2013, documenting the

---

[3] Based upon my training and experience, I know that the absence of opioids in the system of a patient who has been prescribed opioids is evidence of either abuse or diversion as either the patient is not taking the medication as prescribed or is diverting the medication. Either way, negative drug tests in this context are evidence that there is a problem.

[4] Defendant PARRY is authorized by the DEA and U.S. Department of Health and Human Services to treat patients with opioid addiction via the issuance of in-office prescriptions such as Suboxone.

fact that an anonymous person contacted defendant PARRY'S office and advised that Jane Doe was selling her oxycodone and xanex[5] pills. Defendant PARRY'S file further reveals that on February 19, 2013, defendant PARRY discussed the anonymous call with Jane Doe, and while she denied selling her pills, Jane Doe advised that she was taking her medications and "running out early."[6]

  e. An entry dated June 6, 2012, documenting a telephone call made by Jane Doe's mother to defendant PARRY's office wherein she outlined Jane Doe's 10 year struggle with opioid addiction and rehabilitation.[7]

  f. An entry dated August 7, 2013, documenting a telephone call defendant PARRY received from an attending physician of a Long Island Hospital notifying defendant PARRY that Jane Doe was being treated for an overdose and the resulting respatory suppression, and thus she was intubated.

  16. On August 28, 2013, Jane Doe went to defendant PARRY

---

[5] During this time period, defendant PARRY was prescribing both oxycodone and xanex to Jane Doe.

[6] Based upon my training and experience, I know that when a patient "runs out" of opioid medication "early," this means that the patient is not taking the opioid medication as directed and is likely evidence of addiction to the opioid.

[7] Defendant PARRY initialed this entry in the file acknowledging that he reviewed this information.

for an office visit. At that time defendant PARRY wrote in Jane Doe's file, "patient denies ever being in inpatient rehab/detox" and defendant PARRY opined, that there were "no signs of overuse or abuse." On August 28, 2013, defendant PARRY prescribed Jane Doe the following medications:[8]

| DATE | TYPE OF MEDICATION | STRENGTH OF MEDICATION | NUMBER OF PILLS |
| --- | --- | --- | --- |
| 8/28/13 | Oxycodone | 30 mg | 150 |
| 8/28/13 | Methadone | 10 mg | 480 |
| 8/23/13 | Hydrocodone | 10/325 mg | 120 |

17. Between September 30, 2014 and February 21, 2014, defendant PARRY continued to issue controlled substance prescriptions to Jane Doe for methadone, oxycodone and hydrocodone as follows:

| DATE | TYPE OF MEDICATION | STRENGTH OF MEDICATION | NUMBER OF PILLS |
| --- | --- | --- | --- |
| 9/30/13 | Oxycodone | 30 mg | 150 |
| 9/30/13 | Methadone | 10 mg | 480 |
| 9/30/13 | Hydrocodone | 10/325 mg | 120 |
| 10/28/13 | Oxycodone | 30 mg | 150 |
| 10/28/13 | Methadone | 10 mg | 300 |

---

[8] Defendant PARRY also prescribed other controlled substances to Jane Doe at this visit.

| 10/28/13 | Hydrocodone | 10/325 mg | 180 |
| 11/20/13 | Oxycodone | 30 mg | 150 |
| 10/20/13 | Hydrocodone | 10/325 mg | 180 |
| 12/16/13 | Methadone | 10 mg | 350 |
| 12/16/13 | Hydrocodone | 10/325 mg | 180 |
| 1/10/14 | Oxycodone | 30 mg | 150 |
| 1/25/14 | Methadone | 10 mg | 350 |
| 1/25/14 | Hydrocodone | 10/325 mg | 180 |
| 2/21/14 | Oxycodone | 30 mg | 150 |
| 2/21/14 | Methadone | 10 mg | 350 |
| 2/21/14 | Hydrocodone | 10/325 mg | 180 |

18. On February 27, 2014, Jane Doe was found dead in her home. An autopsy was later performed by the Suffolk County Medical Examiner's Office and it was determined that the cause of Jane Doe's death was acute intoxication due to the combined effects of hydrocodone, methodone and carisoprodol, all prescriptions issued by the defendant PARRY and filled by Jane Doe at a pharmacy in February 2014. A review of the controlled substance prescription database reveals that defendant PARRY was the only physician prescribing those medication to Jane Doe at that time.

19. As part of this investigation, I have consulted with Seth Waldman, M.D., a pain management specialist and the Director of the Division of Pain Management at the Hospital for Special Surgery in New York City. After reviewing the file in this matter, which included all of the information set forth above, Dr. Seth Waldman, opined that that all prescription issued by defendant PARRY to Jane Doe on and after August 28, 2013 were issued outside the usual course of professional practice and not for a legitimate medical purpose.

WHEREFORE your affiant respectfully requests that a warrant be issued for the defendant STEVEN PARRY so that he may be dealt with according to law.

_____
MICHELLE L. O'TOOLE
Special Agent, DEA

Sworn to before me this
23rd day of February, 2016

_____
THE HONORABLE ANNE . SHIELDS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK